**COMMON CAUSE, Plaintiff,**

v.

**FEDERAL ELECTION COMMISSION, Defendant.**

**Civ. A. No. 89–0524.**

United States District Court, District of Columbia.

Jan. 24, 1990.

---

Roger M. Witten, Carol F. Lee, W. Hardy Callcott, Washington, D.C., for plaintiff.

Lawrence M. Noble, Richard B. Bader, Ivan Rivera, Robert W. Bonham, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GESELL, District Judge.

I. Findings of Fact.

1. Plaintiff, Common Cause, is a non-profit membership corporation whose activities include efforts to reform campaign finance practices.

2. Defendant, the Federal Election Commission ("FEC" or "Commission"), is an independent agency of the United States Government charged with enforcing the federal election laws.

3. The National Republican Senatorial Committee ("NRSC") is a political committee registered with the FEC under the Federal Election Campaign Act, 2 U.S.C. § 431 et seq., and is dedicated to the election of Republican candidates to the United States Senate.

4. On or about September 2, 1986, the NRSC mass-mailed a solicitation for contributions on the letterhead of the Vice President of the United States, with the purported signature of then–Vice President George Bush.

a. The NRSC sent out twenty-four different versions of the solicitation letter, each mentioning four states in which U.S. Senate campaigns were occurring in 1986 but not mentioning the names of the Republican candidates in those states. In total, twelve different campaigns were mentioned in the letters, although some campaigns were mentioned in more letters than other campaigns.

b. The different versions of the solicitation letters were sent to different mailing lists with different histories of giving in support of Republican candidates, and requested different amounts of money, depending on that past history of support.

c. Each solicitation letter indicated that the amount contributed in response to that letter would be divided equally among the four campaigns mentioned in the letter.

d. Each solicitation letter requested that the recipient make his or her check payable to the NRSC or organizations under the control of the NRSC (such as the "Inner Circle" or "Republican Presidential Task Force"), and the funds received as a result of the solicitation were deposited in the bank accounts under the control of the NRSC. The funds were then disbursed by the NRSC to the various campaigns.

e. The solicitation letters stated that they were authorized and paid for by the NRSC, and did not state that they were authorized or paid for by any of the campaigns mentioned in those letters.

f. The states mentioned in the NRSC Bush mailings were: Alabama, Arkansas, California, Colorado, Florida, Georgia, Louisiana, Missouri, Nevada, North Carolina, South Dakota and Vermont. The Republican candidates in those states, respectively, were: Jeremiah Denton, Asa Hutchinson, Ed Zschau, Kenneth Kramer, Paula Haw-

kins, Mack Mattingly, Henson Moore, Christopher Bond, James Santini, James Broyhill, James Abdnor and Richard Snelling.

5. The twelve campaigns mentioned in the letters each signed an agreement with the NRSC agreeing to pay for the cost of mailings mentioning their race.

6. No candidate participated in the planning, approval, implementation or oversight of the NRSC solicitation program, nor did any candidate authorize or approve the letters sent by the NRSC as part of that program.

7. The NRSC treated the funds received as a result of each Bush solicitation letter as contributions earmarked for the four campaigns mentioned in that letter, and passed on those funds to the twelve Republican Senate campaigns. The NRSC did not report those contributions to the FEC as contributions by the individual donors to it, nor did the NRSC report the funds passed on to the campaigns as contributions by it to those campaigns; rather, the NRSC caused the campaigns to report the contributions as having been made directly by the individual donors to those campaigns. Some of the individual donors were thus reported to have contributed to candidates of whom the individuals had never heard.

8. The NRSC Bush mailings cost approximately $672,000. Of this amount, the NRSC billed the campaigns for the $62,909 cost of the mailings that did produce a donation, but did not pass on the $610,891 cost of the mailings that did not produce a donation.

9. In connection with some contributions received as a result of the Bush solicitations, the NRSC determined that the contributors affirmatively intended to earmark the funds so contributed to the NRSC, and the NRSC accounted for these funds as contributions to it. However, for $108,086 in funds later determined by the FEC General Counsel to have been earmarked for the NRSC, the NRSC did not account for the funds as contributions to it and, instead, treated the checks as earmarked for specific candidates.

10. In sum, the NRSC received approximately $2,826,909 as a result of the Bush solicitation, which it treated as contributions directly to the twelve campaigns by the individual donors, rather than as contributions to the NRSC itself, or as contributions by the NRSC to those campaigns.

11. On October 28, 1986, Common Cause filed a complaint with the FEC, alleging that the NRSC's accounting for the Bush mailings violated the Federal Election Campaign Act. Common Cause alleged in part that the NRSC exercised "direction or control" of the contributions received as a result of the mailings, and therefore any such contributions must be reported as contributions by the NRSC to those candidates, and counted against the NRSC's contribution limits to those candidates. Common Cause alternatively alleged that the original donors had not "earmarked" their contributions at all, and therefore the contributions were properly characterized as contributions by the original donors to the NRSC, followed by contributions by the NRSC to the twelve campaigns. On November 14, 1986, Common Cause filed a supplement to this complaint.

12. On April 9, 1987, the FEC decided by a vote of 6–0 to find reason to believe that the NRSC had violated 2 U.S.C. §§ 434(b), 441a(h) and 441d(a), as well as 11 C.F.R. § 110.6(d)(2).

13. After investigating the matters alleged in the complaint of Common Cause, on January 28, 1988, the General Counsel of the FEC recommended that the FEC find probable cause that the NRSC had violated all of the provisions recited in paragraph 12.

14. After receiving a brief from the NRSC, on April 21, 1988, the General Counsel again recommended that the FEC find probable cause for the same violations.

15. On May 3, 1988, the FEC directed its General Counsel to investigate further the NRSC's 1986 solicitation program, and prepare another brief setting forth its findings.

16. As a result of its additional investigation, on June 24, 1988, the FEC General Counsel recommended that the FEC find

probable cause to believe that the NRSC had committed additional violations of the same sections previously charged against it in connection with the 1986 solicitation program.

17. After receipt of another brief from the NRSC, on July 20, 1988, the FEC General Counsel made its final enforcement recommendation to the FEC. The General Counsel recommended that the FEC find probable cause:

a. that the NRSC violated 2 U.S.C. § 434(b) and 11 C.F.R. § 110.6(d)(2) by failing to report as contributions from itself approximately $2,718,813.60 in contributions from itself to the twelve Republican campaign committees, on the ground that the NRSC exerted direction or control over the choice of the recipient candidates;[1]

b. that the NRSC violated 2 U.S.C. § 434(b) by failing to report as contributions from itself $108,086 in contributions earmarked for the NRSC but forwarded to six of the twelve Republican campaign committees;

c. that the NRSC violated 2 U.S.C. § 434(b) by failing to report as contributions to the twelve campaigns $610,891.03 in costs related to unsuccessful solicitations;

d. that the NRSC violated 2 U.S.C. § 441a(h) by exceeding the $17,500 limitation on contributions to the twelve campaigns by a total of $3,222,165.25; and

e. that the NRSC violated 2 U.S.C. § 441d(a)(1).

18. On July 26, 1988, the FEC deadlocked 3–3 on the General Counsel's "direction or control" recommendation, and therefore pursuant to statute, the recommendation was rejected. The FEC accepted the remainder of the General Counsel's recommendations, with the exception that, as a result of the deadlock on the "direction or control" recommendation, the total amount of the excess contribution under 2

U.S.C. § 441a(h) was reduced from $3,222,-165.25 to $534,249.25.

19. On December 23, 1988, the FEC voted to accept a conciliation agreement with the NRSC. That conciliation agreement contains findings of all of the violations for which the FEC found probable cause, and included a $20,000 civil penalty to be paid by the NRSC.

20. On December 29, 1988, the FEC notified Common Cause that it had concluded action with respect to Common Cause's complaint against the NRSC, and that the FEC had dismissed the "direction or control" allegation made by Common Cause.

21. On January 30, 1989, FEC Commissioner Josefiak filed a "Statement of Reasons" for his vote against the General Counsel's "direction or control" enforcement recommendation. On February 24, 1989, Commissioners Aikens and Elliott joined in that statement.

22. On February 27, 1989, Common Cause filed this suit, seeking review of the FEC's decision to dismiss portions of its complaint against the NRSC.

23. On June 2, 1989, Commissioners McDonald, McGarry and Thomas filed a Statement of Reasons for their vote in favor of the General Counsel's "direction or control" enforcement recommendation.

II. Conclusions of Law.

1. This Court has jurisdiction over this action pursuant to 2 U.S.C. § 437g(a)(8)(A) and 28 U.S.C. § 1331, and venue is proper in this district pursuant to 2 U.S.C. § 437g(a)(8)(A) and 28 U.S.C. § 1391.

2. In 1986, the NRSC was a political committee within the meaning of 2 U.S.C. § 431(4), and therefore had a duty under 2 U.S.C. § 434(b) to file accurate periodic reports with the FEC regarding its expenditures and contributions. Under 2 U.S.C. § 441a(h), the NRSC was subject to a contribution limit of $17,500 for each U.S. Senate candidate during the year an election is

---

1. The difference between this sum and the total amount raised by the 1986 Bush solicitation is due to the fact that the NRSC could legally contribute $17,500 to each of the twelve campaigns, and had also been designated as agent

by the Republican National Committee to make additional contributions (the size of which varied according to the population of the state) to those campaigns. The NRSC had largely exhausted those contribution limits.

held. In 1986, the NRSC was the agent of the Republican National Committee, and therefore under 2 U.S.C. § 441a(d)(3) could also make a contribution to each U.S. Senate candidate equal to the greater of (a) $20,000, or (b) two cents multiplied by the voting age population of the state in which the Senate candidate is running.

3. 11 C.F.R. § 110.6(b) provides that a contribution is "earmarked" if it is subject to a designation, instruction or encumbrance which results in all or any part of that contribution being made to a clearly identified candidate.

4. 11 C.F.R. § 110.6(d) provides that, if a person or entity acts as a conduit for the earmarked contribution of another person, the contribution limits of the conduit are not affected by passing on the earmarked contribution, except where the conduit exercises "any direction or control" over the recipient candidate, in which case the contribution affects the contribution limits of both the original donor and the conduit.

5. 2 U.S.C. § 437g(a)(8) provides that any person who files a complaint with the FEC may file suit within 60 days of the date when the Commission dismisses that complaint to have the dismissal set aside as contrary to law. Common Cause's filing of this suit was timely under this provision.

6. Contributions sent in response to the NRSC's 1986 Bush solicitation mailings were not "earmarked" within the meaning of 11 C.F.R. § 110.6(b). Contributions were made payable to the NRSC or some organization under their control (such as the "Inner Circle" or "Republican Presidential Task Force"), and not to specific candidates. The NRSC was not clearly obliged by law to pass on all those contributions to the candidates in the states mentioned in the mailings pursuant to the formula indicated in the letter. The candidates who ultimately received these contributions were not "clearly identified" in the mailings in that neither their names nor their pictures appeared in the mailings and their identities were not apparent to many contributors. See 2 U.S.C. § 431(18) (defining "clearly identified"). Record evidence on the point suggests that individual do-

nors had often never even heard of the candidates to whom they supposedly had earmarked contributions. Donors did not make a meaningful designation, instruction or encumbrance on the NRSC's use of the contributed funds. The record evidence also suggests that individual donors intended to give to the NRSC for use in its discretion. The FEC's decision to dismiss the portion of Common Cause's complaint alleging that the NRSC violated its contribution limits and reporting obligations when the NRSC treated contributions received as a result of the 1986 Bush mailings as "earmarked" was arbitrary and capricious and contrary to law.

7. The FEC's decision that the NRSC did not exercise "any direction or control" over the 1986 Bush mailings was not mandated by prior FEC precedent, was effected by a 3–3 tie vote and was contrary to the recommendation of the FEC General Counsel. It cannot be upheld, because it ignored the plain language of the applicable regulation and was not rationally explained.

8. Contrary to the conclusion of Commissioner Josefiak's Statement of Reasons, the fact that the donors were informed by the Bush letter of the formula for division of contributions and gave voluntarily does not decide the "direction or control" issue. The plain language of the regulation controls.

9. The decision of the FEC not to enforce in the circumstances presented by the record was contrary to the intent of Congress to limit participation of national parties in campaign fundraising.

10. The NRSC exercised some "direction or control" within the meaning of 11 C.F.R. § 110.6(d) over the contributions at issue. The NRSC chose the twelve campaigns which were mentioned in the letters; the NRSC chose how many letters in which each campaign would be mentioned; and the NRSC chose which mailing lists, with which donation histories, would be used for each version of the letter. The contributions were to be made to the NRSC or an organization controlled by the NRSC, were deposited in the NRSC's bank accounts,

and were disbursed to the campaigns by the NRSC. Accordingly, the FEC's decision to dismiss the portion of Common Cause's complaint alleging that the NRSC violated its contribution limits and reporting obligations in connection with the 1986 Bush mailings was arbitrary and capricious.

## ORDER

Upon consideration of the administrative record and the full briefs of the parties supporting and opposing their respective cross-motions for summary judgment in this action for declaratory judgment and injunctive relief, and for the reasons set forth in the attached findings of fact and conclusions of law, it is hereby

ORDERED that the Federal Election Commission's dismissal of part of Common Cause's complaint against the National Republican Senatorial Committee is reversed as arbitrary and capricious and contrary to law; and it is further

ORDERED that this matter is remanded, pursuant to 2 U.S.C. § 437g(a)(8)(C), to the Federal Election Commission, which is directed to conform with this declaration and proceed accordingly within 30 days of the date of this Order.